**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

---

|  |  |
|---|---|
| ANR, INC. | : |
| | : |
| Plaintiff/Counter-Defendant, | : |
| | : |
| v. | : |
| | : |
| | : Civil Action No. 07-2044 |
| ERIC and GAIL ROTHNER | : |
| | : |
| Defendants/Counterclaimants, | : Honorable Geraldine Soat Brown |
| and | : |
| | : |
| ROTHNER HEALTH VENTURES G II, LLC, | : |
| | : |
| Counterclaimant. | : |
| | : |

---

**ANR INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO DISMISS COUNTS I AND II OF THE COUNTERCLAIM AND
MOTION TO STRIKE THE FIRST AFFIRMATIVE DEFENSE**

Plaintiff/Counter-Defendant ANR, Inc., ("ANR") by and through its undersigned

counsel, respectfully submits this Memorandum in support of its Motion to Dismiss Counts I and

II of the Counterclaim and Motion to Strike The First Affirmative Defense:

**<u>INTRODUCTION</u>**

In their Answer to the Complaint, Eric Rothner and Gail Rothner (hereinafter, the

"Rothners" or "defendants") have included an affirmative defense (the "First Affirmative

Defense") and a two-count Counterclaim (attached hereto, with exhibits, as Exhibit A) that are

deficient as a matter of law. Counts I and II of the Counterclaim should be dismissed pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure for three reasons.[1] First, the claims are

contractually time-barred under the Asset Purchase Agreement, which provided for a twenty-

---

[1] Each of these reasons for dismissing Counts I and II of the Counterclaim are equally applicable to
ANR's Motion to Strike the First Affirmative Defense, as the affirmative defense is premised solely upon
the issues raised in the Counterclaim.

month survival of representations and warranties, following which all potentially relevant claims under the Agreement expired. As Counts I and II of the Counterclaim both have been filed several years after this deadline has passed, these claims fail as a matter of law.

Second, Counts I and II of the Counterclaim are legally deficient because they are premised upon non-existent representations and warranties under the Asset Purchase Agreement. The Agreement provided for the purchase of several nursing homes from ANR on an "as-is" basis, with no representations or warranties concerning these facilities except for those specifically enumerated therein. The Asset Purchase Agreement does not contain the representations or warranties upon which the Rothners have sued in Counts I and II of the Complaint. Accordingly, these claims also fail as a matter of law for this reason.

Additionally, the Rothners are barred from bringing Counts I and II of the Counterclaim in their personal capacities, because the harm alleged is wholly derivative of the harm allegedly suffered by Rothner Health Ventures G II, LLC ("RHV"), the Rothners' LLC. Under the law of Illinois, an LLC, like a corporation or limited liability partnership, is an entity legally separate and distinct from its individual shareholders or members. Thus, the Rothners, as merely shareholders of RHV, have no personal or individual right to sue ANR for damages allegedly suffered solely by RHV. Counts I and II of the Counterclaim, therefore, may not be brought by the Rothners in their individual capacities.

Accordingly, for these reasons, as set forth more fully below, Counts I and II of the Counterclaim should be dismissed as a matter of law, and the Rothners' First Affirmative Defense should be stricken from their Answer.

## FACTS

The Counterclaim and First Affirmative Defense are premised upon allegations concerning the Asset Purchase Agreement entered into between ANR and RHV for the sale of eight nursing homes in Illinois. (*See* Asset Purchase Agreement, Ex. A of Counterclaim). The

2

Rothners own and operate RHV, a limited liability company organized and existing under the laws of Illinois. Pursuant to the Second Amendment to the Asset Purchase Agreement (attached to the Counterclaim as Exhibit B), the parties agreed to February 4, 2003 as the Agreement's closing date (the "Closing Date").

In connection with the Asset Purchase Agreement, the Rothners personally entered into a Purchase Money Promissory Note (the "Promissory Note," attached to ANR's Complaint as Exhibit A) with ANR in order to facilitate the sale by ANR of eight nursing homes to RHV. Pursuant to the terms of the Promissory Note, ANR loaned to the Rothners the principal sum of One Million Dollars in exchange for which the Rothners agreed to pay quarterly interest on the balance of the Promissory Note and to pay the entire principal balance of the Promissory Note by January 31, 2006. As the Rothners failed to repay the entire principal balance of the Promissory Note, in addition to interest due on the Note, ANR brought the present action on June 30, 2006 to recover these amounts due under the Promissory Note.

Almost one year later, in their Answer to the Complaint, the Rothners filed a Counterclaim against ANR, joining RHV as a counterclaimant. The Counterclaim consists of two counts: one for breach of contract, and one for a declaratory judgment. Both of these claims, however, alleging a breach of the Asset Purchase Agreement, have long since expired. The Asset Purchase Agreement contains a "Survival of Representations and Warranties" clause that provides for a twenty-month window from the Closing Date in which claims for breach of the Agreement could be brought. (*See* Asset Purchase Agreement, Ex. A of Counterclaim, ¶ 19). Given that the Closing Date for the Asset Purchase Agreement was February 4, 2003, all relevant breach of representation and warranty claims under the Agreement expired on October 4, 2004. The Counterclaim, however, was not filed until June 8, 2007.

Factually, the Counterclaim (as well as the Rothners' First Affirmative Defense) centers upon one of the eight nursing homes purchased by RHV from ANR, the Chateau Center nursing

home.  The Rothners and RHV allege that ANR purportedly breached a provision in the Asset
Purchase Agreement to "compensate RHV for the costs it incurred to repair the physical plant
issue at the Chateau Center nursing home."  (Counterclaim ¶ 29).  These alleged costs stemmed
from additional renovations to the Chateau Center, following the Closing Date, that were
supposedly required in order to obtain a necessary compliance letter from the Illinois Department
of Public Health (the "IDPH").

The Rothners and RHV allege that Schedule 9(n) of the Asset Purchase Agreement
provides a basis for the repayment of these additional renovation costs post Closing.  They are
wrong.  Each of the nursing home facilities at issue in the Asset Purchase Agreement was
purchased "as-is," with full opportunity on the part of RHV to conduct a complete independent
investigation of the real property and personal property being purchased.  (Asset Purchase
Agreement, Ex. A of Counterclaim, ¶ 9(c)).  Paragraph 9(c) of the Asset Purchase Agreement
confirms that no implicit representations or warranties were created with respect to any of the
nursing homes being acquired by RHV.  (*See* Asset Purchase Agreement, Ex. A of Counterclaim,
¶ 9(c) ("Purchaser hereby acknowledges and agrees… that Purchaser is acquiring the real
property and personal property … in "as-is" condition on the Closing Date, without any
representations and warranties which survive Closing, except as expressly set forth herein.").

*Paragraph 9(n)* of the Asset Purchase Agreement states that: "*[e]xcept as set forth on
Schedule 9(n)* or otherwise disclosed to Purchaser… to Seller's Knowledge, all such properties
and assets are in good operating condition, ordinary wear and tear and casualty damage
excepted."  (Asset Purchase Agreement, Ex. A of Counterclaim, ¶ 9(n) (emphasis added).  Thus,
Schedule 9(n) simply described to RHV the problems that ANR *had knowledge of* with regard to
its representation and warranty in Paragraph 9(n) concerning the physical condition of the
properties.  Contrary to RHV's contention, this was not an agreement by ANR to repair these
problems.  As is clear from Schedule 9(n), ANR made no representations or warranties

concerning repayment of future expenses related to the ongoing renovations at the Chateau Center.

Accordingly, the Rothners' and RHV's breach of contract and declaratory judgment claims against ANR lack any basis in the Asset Purchase Agreement. Consequently, as set forth more fully below, Counts I and II of the Counterclaim should be dismissed as a matter of law, and the Rothners' First Affirmative Defense should be stricken from their Answer.

## ARGUMENT

### I.     Motion to Dismiss Counts I and II of the Counterclaim

As the Asset Purchase Agreement, incorporated into the Rothners' Counterclaim, makes clear, the Rothners have no basis for a breach of contract claim or declaratory judgment claim against ANR.  These meritless claims are predicated upon allegations that ANR breached the Asset Purchase Agreement by "refusing to compensate RHV for the costs it incurred to repair the physical plant issues at the Chateau Center nursing home."  (Rothner Counterclaim, ¶ 29).  These claims fail as a matter of law for the several reasons set forth at length below.

#### A.     Standard on Motion to Dismiss.

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom.  *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).  A court should grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure where claimant can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Cemail v. Viking Dodge, Inc.*, 982 F.Supp. 1296, 1300 (N.D. Ill. 1997).

The allegations of a complaint should be dismissed for a failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45-46. In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998). Any conclusions pled must "provide the defendant with at least minimum notice of claim," and a claimant cannot satisfy the federal pleading requirement merely "by attaching bare legal conclusions to narrated facts which fail to outline bases of [his] claims." *Perkins*, 939 F.2d at 466-67.

While the Court primarily considers the allegations of the complaint, it also may consider a document integral to, attached to, or explicitly relied upon in the complaint. *See, e.g.*, Fed. R. Civ. P. 10(c) (documents incorporated by reference or attached to the pleadings as exhibits are considered part of the pleadings for all purposes).

**B.      Counts I and II of the Counterclaim Fail as a Matter of Law Because They are Contractually Time-Barred.**

The Rothners and RHV's breach of contract and declaratory judgment claims against ANR fail as a matter of law because they have been brought after the contractual limitations period for such claims has expired. The Asset Purchase Agreement provided for a survival period of twenty months for all relevant claims under the Agreement from the date of Closing. The breach of contract and declaratory judgment claims in the Counterclaim have been brought more than two years after the limitations period for such claims has expired under the Asset Purchase Agreement. Accordingly, Under Illinois law,[2] Counts I and II of the Counterclaim are legally deficient and should therefore be dismissed.

"[A] provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." *Taylor v.*

---

[2]      The parties agreed that Illinois law governs the validity and interpretation of the Asset Purchase Agreement. (*See* Asset Purchase Agreement, Counterclaim Ex. B, ¶ 35.) In addition, the relationship of the parties and conduct at issue suggest that Illinois has the most significant interest in the application of its laws to this dispute.

*Western and Southern Life Ins. Co.*, 966 F.2d 1188, 1204 (7th Cir. 1992) (citing *Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 608, 67 S.Ct. 1355, 1365, 91 L.Ed. 1687 (1947). *See also Village of Lake in the Hills v. Illinois Emcasco Ins. Co.*, 506 N.E.2d 681, 683 (Ill. App. 1987) ("[p]arties to a contract may validly agree to set a reasonable time limit within which a suit on the contract must be filed."); *Truck Components Inc. v. Beatrice Co.*, 143 F.3d 1057, 1060 (7th Cir. 1998) (contractual limitations periods requiring claims arising under a contract to be brought within a specified period are common and enforceable.").

While courts "sometimes refuse to enforce contractual periods so short that they would be equivalent to eliminating the right to sue for breach of contract… [even] a one-year period cannot be so classified." *Id*. The contractual limitations provision at issue in the Asset Purchase Agreement provides for a survival period of twenty months. (*See* Asset Purchase Agreement, Ex. A of Counterclaim, ¶ 19). Therefore, it clearly falls within the bounds of enforceability under Illinois law.

Paragraph 19 of the Asset Purchase Agreement, i.e., the "Survival of Representations and Warranties" clause, provides, in pertinent part:

> ***all representations, warranties and covenants in this Agreement***, or in any certificate or other writing delivered pursuant hereto, ***shall survive the closing of the transaction described in this Agreement for a period of <u>twenty (20) months</u> from the Closing Date***[.]

(Asset Purchase Agreement, Ex. A of Counterclaim, ¶ 19 (emphasis added)).

In the second amended version of the Asset Purchase Agreement, the parties set February 4, 2003, as the Agreement's Closing Date. (Second Amendment, Ex. B of Counterclaim, ¶ 8). Accordingly, pursuant to the express terms of the Asset Purchase Agreement, any breach of representation or warranty claims under the Agreement were required to be brought by no later than October 4, 2004.

The Rothners and RHV did not file their breach of contract claim under the Asset

7

Purchase Agreement until June 8, 2007, *over two years and eight months* following the expiration of contract claims between the parties. Indeed, the Rothners did not even give ANR *notice* of the breach of contract claim raised in the Counterclaim until January 30, 2006 (*see* Counterclaim ¶ 22), over two years after any such claim had expired. Moreover, the Rothners and RHV have not alleged, nor could they, that ANR withheld any material information from the Rothners or RHV, which would have prevented them from obtaining the necessary facts supposedly giving rise to their breach of contract and declaratory judgment claims.

Indeed, the Asset Purchase Agreement reveals exactly the opposite, i.e., that ANR *had made the Rothners and RHV fully aware* of all material circumstances regarding the ongoing renovations to the Chateau Center nursing home, and the outstanding letter of compliance by the IDPH needed for final approval of such renovations. (*See* Asset Purchase Agreement, Ex. A of Counterclaim, Schedule 9(n)). Schedule 9(n) put the Rothners on notice that the Chateau Center had been undergoing major renovations since 1999. Specifically, the Rothners and RHV were put on notice with respect to the Phase II renovations at the Chateau Center that, due to several events (i.e., "a change in Construction Management and the bankruptcy filing") the Architect/Engineer that was utilized for the renovations did not seek a letter of compliance from IDPH for the renovations. (*Id*.) ANR explained in the Schedule 9(n), however, that with the exception of a satisfactory Air Balance Report, the Chateau Center was in compliance, and that the trouble spots identified in previous Air Balance Reports had been corrected and that a certified engineer would conduct a new Air Balance Test in order to bring the facility into complete compliance. (*Id*.)

As is clear from the description of the outstanding issues regarding the Chateau Center renovations, the Rothners and RHV were made aware, prior to Closing, of all material information. Moreover, following the Closing Date of the Asset Purchase Agreement, the Rothners and RHV were in full possession of the Chateau Center, and thus were in a position to

be aware of any problems developing with respect to obtaining final approval of the renovations from IDPH. Thus, as of February 4, 2003, i.e., the Asset Purchase Agreement's Closing Date, the Rothners and RHV were fully on notice of any potential defects in the Chateau Center nursing home. The Rothners, however, never filed a notice of (or brought) any claims with respect to the alleged defects.

Additionally, *as admitted* in the Counterclaim, the Rothners and RHV were aware and on notice of the specific areas of concern identified by IDPH holding up approval of the renovations to the Chateau Center. (*See* Counterclaim ¶ 21). On May 27, 2003, IDPH sent a letter to the Chateau Center regarding an area of concern that needed to be addressed before IDPH would grant final approval for the renovations. (*See* IDPH Letter, Ex. D of Counterclaim).

Accordingly, at the absolute latest date, i.e., May 27, 2003, the Rothners and RHV were fully aware and on notice of all potential facts purportedly giving rise to the breach of contract claim set forth in the Counterclaim concerning renovations to the Chateau Center. The Rothners and RHV's failure to bring a claim along these lines within the prescribed twenty month contractual limitations period in the Asset Purchase Agreement, therefore, is inexcusable and acts as a complete bar to any such claims at this time.

Nevertheless, in a feeble effort to side-step this issue, the Rothners and RHV have spuriously argued in the Counterclaim that their claim for repayment of costs associated with the renovations to the Chateau Center was "already asserted but unresolved by the Closing Date" of the Asset Purchase Agreement. Counterclaim ¶ 29). Yet, the Rothners and RHV have pleaded no reference to any asserted claim for these costs made prior to the Closing Date, and indeed, no such claim (or notice thereof) was ever made. As to the Asset Purchase Agreement, the only section referenced by the Rothners and RHV in this respect is Schedule 9(n), which, as discussed above, merely put the Rothners and RHV on notice prior to Closing of the ongoing renovations to the Chateau Center. Conspicuously lacking from Schedule 9(n), however, is any express

9

representation or warranty concerning repayment of future expenses in connection with possibly needed subsequent renovations to the Chateau Center. Accordingly, it is manifest that Counts I and II of the Counterclaim have expired under the Survival of Representations and Warranties clause in the Asset Purchase Agreement.

Given that Counts I and II of the Counterclaim are contractually time-barred, there is no set of facts under which the Rothners or RHV could prevail on these Counts. They should therefore be dismissed as a matter of law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

> **C.** **Counts I and II of the Counterclaim Find no Basis in the Asset Purchase Agreement and Should Therefore be Dismissed as a Matter of Law.**

The crux of the Rothners' and RHV's breach of contract and declaratory judgment claims in Counts I and II of the Counterclaim is that ANR is somehow liable to RHV for costs associated with bringing the Chateau Center nursing home into regulatory compliance. (*See* Counterclaim ¶¶ 14-20). The Rothners and RHV, however, cite to no contractual provision in the Asset Purchase Agreement that provides for the recovery of such costs from ANR. As these claims turn solely upon the language of the Agreement itself, they may be disposed of at this time as a matter of law.

"It is well-settled that construction of a written contract is a question of law for the court to decide." *CSFM Corp. v. Elbert & McKee Co.*, 870 F.Supp. 841, 849 (N.D. Ill. 1994) (citing *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1438 (7th Cir. 1993)). A "Court must look to the plain language of the contract and also must construe the contract as a whole." *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F.Supp.2d 850, 853 (N.D. Ill. 2007). "Additionally, a court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties

have included." *Id*.

The primary goal of contract interpretation is to give effect to the intention of the parties as set forth in the language of the contract. *Omnitrus Merging Corp. v. Ill. Tool Works, Inc.*, 628 N.E.2d 1165, 1168 (Ill. App 1994)). In construing a contract, the courts first determine whether it is unambiguous by interpreting the contract according to its plain language and "in light of the concrete circumstances in which it was written." *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 565 (7th Cir. 1995)). "If no ambiguity exists in the language of the contract, the parties' intent must be derived by the writing itself as a matter of law." *A.W. Wendell & Sons, Inc. v. Qazi,* 626 N.E.2d 280, 292 (Ill.App. 1993). A contract is unambiguous where it is subject to one reasonable interpretation. *Id*.

As is clear from the face of the Asset Purchase Agreement, ANR *did not warrant* that the IDPH would issue a letter of compliance in connection with the renovations. Nor did ANR agree that it would indemnify the Rothners or RHV for any future costs associated with obtaining such compliance. On the contrary, the Rothners and RHV agreed to just the opposite. Under the terms of the Asset Purchase Agreement, RHV agreed that it would be purchasing the nursing homes "as is," "subject to a complete opportunity to make its own independent investigation of the real property and personal property" being purchased. (Asset Purchase Agreement, Ex. A of Counterclaim, ¶ 9(c). Additionally, RHV agreed that *no representations or warranties would survive* the Closing, except those *expressly set forth* in the Agreement. (*Id*.) Paragraph 9(c) of the Asset Purchase Agreement provides as follows:

> THE PURCHASER HEREBY ACKNOWLEDGES AND AGREES … THAT PURCHASER IS ACQUIRING THE REAL PROPERTY AND PERSONAL PROPERTY BASED SOLELY UPON SUCH INDEPENDENT INVESTIGATION IN "AS-IS" CONDITION ON THE CLOSING DATE, WITHOUT ANY REPRESENTATIONS AND WARRANTIES WHICH SURVIVE CLOSING, EXCEPT AS EXPRESSLY SET FORTH HEREIN[.]

(Asset Purchase Agreement, Ex. A of Counterclaim, ¶ 9(c) (caps in original)).

11

Accordingly, the Asset Purchase Agreement is crystal clear that only *express representations and warranties* specifically enumerated in the Agreement could be sued upon by RHV.  All other potential representations and warranties were expressly disavowed.  The only express representation and warranty that applies to the eight nursing homes is set forth in Paragraph 9(n):

> Except as set forth in Schedule 9(n) … the Facilities … to Seller's Knowledge … are in good operating condition, ordinary wear and tear and casualty damage excepted[.]

(Asset Purchase Agreement, Ex. A of Counterclaim, ¶ 9(n)).

Consequently, the only claim that RHV could possibly have is that ANR had knowledge of a problem in one of the Facilities but failed to disclose the problem.  However, with regard to the Chateau Center, the problem was disclosed in Schedule 9(n), and therefore the defects described in Schedule 9(n) are not subject to the representation and warranty in Paragraph 9(n).  As a result, ANR has no obligation whatsoever for the cost of repairing the defects described with regard to the Chateau Center.

Under Illinois law, "a contract must not be interpreted in a manner that nullifies provisions of that contract."  *Atwood v. St. Paul Fire and Marine Ins. Co.*, 845 N.E.2d 68, 71 (Ill. App. 2006). *See also Smith v. Burkitt*, 795 N.E.2d 385, 389 (Ill. App. 2003) ( "[a] court is not to interpret an agreement in a way that would nullify any of the provisions in the agreement or render them meaningless").  Paragraphs 9(c) and 9(n) of the Asset Purchase Agreement must be given their full effect, which is susceptible to only one reasonable interpretation, i.e., that the Chateau Center was purchased "as-is" and that ANR has no responsibility whatsoever for the defects disclosed in Schedule 9(n).  RHV's attempt to interpret Schedule 9(n) as an agreement by ANR to pay the costs for the renovations is completely irreconcilable with the clear agreement of the parties.

Recognizing this, the Rothners and RHV have resorted in the Counterclaim to citing

12

several irrelevant sections of the Agreement that provide only generally for liability *in the event of a specific breach of any representation or warranty* in the Agreement.  As the Rothners and RHV can point to no representation or warranty that was breached by ANR regarding reimbursement of costs associated with obtaining regulatory compliance at the Chateau Center, the breach of contract and declaratory judgment claims in the Counterclaim lack any basis in the Asset Purchase Agreement.  Counts I and II of the Counterclaim, therefore, should be dismissed Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

      **D.**     **Counts I and II of the Counterclaim Should be Dismissed as a Matter of Law With Respect to the Rothners Because The Rothners' Claims are Entirely Derivative of Those of RHV.**

The Rothners cannot as a matter of law maintain Counts I and II of the Counterclaim in their own names because the harm alleged is wholly derivative of the harm allegedly suffered by RHV, the Rothners' LLC.  Under the law of Illinois, "[t]he law is well-settled that a corporation is an entity legally separate and distinct from its individual shareholders."  *Mount Mansfield Ins. Group, Inc. v. American Intern. Group, Inc.*, 865 N.E.2d 524, 529 (Ill. App. 2007) (citing *Main Bank of Chicago v. Baker*, 427 N.E.2d 94, 101 (Ill. 1981)).[3]  "Thus, a shareholder of a corporation has no personal or individual right to pursue an action against third parties for damages resulting indirectly to the shareholder because of an injury to the corporation."  *Mount Mansfield*, 865 N.E.2d at 529 (citing *Sarno v. Thermen*, 608 N.E.2d 11, 21 (Ill. 1992)).

Indeed, the law is clear in Illinois that an individual shareholder of a corporation or LLC has no right to bring an action in his own name and in his own behalf for a wrong committed against the corporation or LLC, even though the particular wrong may have resulted in a

---

[3]     For purposes of this Motion to Dismiss, it is of no significance that RHV was organized as an LLC instead of a corporation.  Under the law of every potentially relevant jurisdiction, an LLC can sustain injury independent of its owners or shareholders, and may have a derivative suit brought on its behalf.  The principles generally applicable to corporate and partnership derivative suits are equally applicable to LLCs.  *See e.g., Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998); *Victory Packaging v. Jackson Moving Services, L.L.C.*, No. 01 C 529, 2001 WL 103410, *1 (N.D. Ill. Jan. 30, 2001).

depreciation or destruction of the value of the company. S*ee e.g., Waypoint Aviation Services Inc. v. Sandel Avionics, Inc.*, 469 F.3d 1071 (7th Cir. 2006) (corporation's shareholder, who owned all of company's stock, lacked standing to sue defendant for breach of warranty, as any injury was derivative of that of corporation).

The Counterclaim alleges harm solely to RHV. *See* Counterclaim ¶ 30 ("ANR's breach of its obligation to *compensate RHV* for the costs it incurred to repair the physical plant issue at the Chateau Center nursing home *has caused RHV to suffer damage*[.]") (emphasis added). Thus, the Rothners cannot maintain an action against ANR in their own names for damages allegedly suffered by RHV. Counts I and II of the Counterclaim, therefore, should be dismissed as a matter of law with respect to the Rothners in their individual capacities.

## II.      Motion to Strike the Rothners' First Affirmative Defense

 Under Rule 12(f) of the Federal Rules of Civil Procedure, any insufficient affirmative defense, and any immaterial matters may be struck from a pleading. In the Answer and Counterclaim, the Rothners' First Affirmative Defense is deficient as a matter of law, as it relates solely to the Counterclaim, which itself is legally deficient. For the reasons discussed above in ANR's Motion to Dismiss Counts I and II of the Counterclaim, the Rothners' First Affirmative Defense fails as a matter of law. Accordingly, the defense properly may be stricken at this time pursuant to Rule 12(f).

Federal Rule of Civil Procedure 12(f) permits the Court to strike " any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed.R.Civ.P. 12(f). A motion to strike can be a useful means of removing " unnecessary clutter" from a case, which will in effect expedite the proceedings. *Reis Robotics USA, Inc. v. Concept Industries, Inc.*, 462 F.Supp.2d 897, 904 (N.D. Ill. 2006). Affirmative defenses are pleadings and, as such, are subject to all of the same pleading requirements applicable to complaints. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Thus, affirmative defenses must set forth

14

a "short and plain statement" of the basis for the defense. Fed.R.Civ.P. 8(a); *Heller*, 883 F.2d at 1294. Even under the liberal notice pleading standards of the Federal Rules, an affirmative defense must include either direct or inferential allegations as to all elements of the defense asserted. *Renalds v. S.R.G. Rest. Group*, 119 F.Supp.2d 800, 802 (N.D. Ill. 2000). "[B]are bones conclusory allegations" are not sufficient. *Heller*, 883 F.2d at 1295; *Surface Shields, Inc. v. Poly-Tak Prot. Sys. Inc.*, 213 F.R.D. 307, 308 (N.D. Ill. 2003). A court "evaluates the sufficiency of the defense pursuant to a standard identical to Federal Rule of Civil Procedure 12(b)(6)." *Id.*

The Rothners' First Affirmative Defense is legally and factually identical to the Counterclaim. Accordingly, for the reasons set forth above justifying dismissal under Rule 12(b)(6) of Counts I and II of the Counterclaim, the Rothners' First Affirmative Defense should be stricken from the Answer pursuant to Rule 12(f) for failure to state a legally cognizable affirmative defense.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Dismiss Counts I and II of the Counterclaim and Motion to Strike the First Affirmative Defense should be granted.

Respectfully submitted,

**BLANK ROME LLP**

BY: s/ Norman E. Greenspan
NORMAN E. GREENSPAN
LEWIS W. SCHLOSSBERG
One Logan Square
Philadelphia, PA 19103-6998
Telephone: (215) 569-5635
Facsimile: (215) 832-5635

*Attorneys for Plaintiff ANR, Inc.*

15

## **CERTIFICATE OF SERVICE**

I, Norman E. Greenspan, hereby certify that, on this 13th day of July, 2007, I caused the

foregoing Motion to Dismiss Counts I and II of the Counterclaim and Motion to Strike The First

Affirmative Defense, and supporting Memorandum of law, to be served on the following by ECF

filing:

> Peter Kocoras
> Giel Stein
> WINSTON & STRAN, LLP
> 35 West Wacker Drive
> Chicago, Illinois 60601
>
> Jack L. Gruenstein
> Vaira & Riley, PC
> 1600 Market Street
> Suite 650
> Philadelphia, PA 19103

> s/ Norman E. Greenspan
> NORMAN E. GREENSPAN